IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

KIMBERLY C. CUTONE and, )
ANTHONY CUTONE )
            Plaintiffs, )
            v. ) Civil Action No. 04-CV-12725 (JLT)
ELI LILLY AND COMPANY, )
            Defendant. )

**PLAINTIFFS' OPPOSITION TO DEFENDANT ELI LILLY'S
MOTION TO STRIKE THE STATEMENT OF PHILIP CAFFERTY**

Plaintiffs Kimberly Cutone and Anthony Cutone oppose Defendant Eli Lilly and Company's Motion to Strike Statement of Philip Cafferty, and as grounds therefore state:

Plaintiffs respectfully request that the Court consider their Opposition to Defendant's Motion to Strike the Statement of Harold Sparr, R. Ph., filed herewith, which for purpose of brevity is herein incorporated, before reviewing this Opposition. Mr. Cafferty, like Mr. Sparr, is a mixed fact and expert witness and the substance of his testimony is similar to Mr. Sparr's and integral to the other documents supporting Plaintiffs' Opposition to Defendant Lilly's Motion for Summary Judgment. Plaintiffs have attempted to relieve the Court of reading much of the same material twice.

    1. Mr. Cafferty's testimony is reliable. He is a fact witness as to his observations as an Eli Lilly and Company ("Lilly") detailman and Lilly District Manager. His statement as to his personal observations of the pharmacists of New England and the absence of any non-Lilly diethylstilbestrol ("DES") are both relevant and material, and support the other testimony from Pharmacist Sparr and Plaintiff Kimberly Cutone's mother, Virginia Camporesi. In and of itself,

Mr. Cafferty's testimony may not complete the Plaintiffs' identification of Lilly. However, when viewed as part of a larger whole, Mr. Cafferty's testimony is an integral part of the Plaintiffs' demonstration that it was clearly Lilly's DES, and not the DES of any other company, to which Kimberly Cutone was exposed *in utero*.

2. Mr. Cafferty's statement is admissible. Mr. Cafferty was an employee of Defendant Lilly for 37 years as a detailman and district manager. See Amended Statement of Philip J. Cafferty, dated Oct. 22, 2003 ("Cafferty Statement"), attached hereto as Exhibit 10. As a detailman visiting Massachusetts pharmacies, he was able to see the brand of DES on the shelves of the hundreds of pharmacies he visited. See id. His testimony that the DES in Massachusetts was overwhelmingly the Lilly brand is reliable due to his personal observations, review of statements taken under threat of perjury, and personal experience with the Lilly company. As a pharmacist and district manager of Eli Lilly and due to his review of sworn statements with pharmacists, as well as conversations with Massachusetts pharmacists, Mr. Cafferty would give the jury some evidence of the pervasiveness of the Lilly brand on the DES market.

3. Philip Cafferty is qualified to give expert testimony concerning the prevalence of DES in Massachusetts. Mr. Cafferty's qualifications include: being a Lilly Detailman

    (a) being a Lilly District Manager of Rhode Island and Massachusetts;

    (b) being a retail pharmacist for over forty years;

    (c) being familiar with DES ordering, stocking, and dispensing practices of his assigned regions;

(d) being familiar with the Lilly DES litigation, Physician's Desk Reference, Red & Blue Books, Lilly's Digest, Lilly publication for pharmacist Tile & Till, De Re Medica, and Physician's Bulletin;

(e) being familiar with Lilly's monopolistic "fair trade" and wholesaler restrictions; and

(f) being familiar with Lilly's promulgation of DES and personal knowledge of the popularity and convenience of Lilly's DES inventory and stocking advantages.

Cafferty Statement, Ex. 10.

Mr. Cafferty was an expert in marketing pharmaceutical products for Lilly for twenty years. He was aware of their sales and marketing procedures. He was in charge of Lilly's detailmen, salesmen and marketing for the New England area at the appropriate times. His statement and deposition testimony indicate that, based upon his personal knowledge of the DES market and his personal observations as to Lilly practice and procedure, it is more likely than not that the DES ingested in this case was Lilly's.

4. Mr. Cafferty is not biased against Eli Lilly and Company. He was an independent pharmacist when Plaintiff found him. Mr. Cafferty was a loyal employee of Lilly for twenty years. Furthermore, Mr. Cafferty was receiving Lilly funds as a retiree at the time of his study and testimony. Any attack on the witness' credibility is properly placed in front of a jury – not in a motion for summary judgment.

5. Lilly claims that Pharmacist Cafferty has no relevant information of Lilly's invasion of the DES market. The question then arises: who would have better knowledge? Mr. Cafferty is a pharmacist who spent twenty years detailing drugs for Defendant Lilly. He had

3

occasion to visit hundreds of drug stores in Massachusetts and Rhode Island, viewing the brand(s) of DES on the shelves. He has conducted interviews with pharmacists who practiced in the 1950's and 1960's to conclude that, in fact, Lilly DES had the "lion's share" of the market in Massachusetts at the relevant time. See id.

6. On March 18, 2005, Defendant Lilly provided non-responsive answers to Plaintiffs' First Set of Interrogatories that sought to discover facts, documents, and witnesses who would have any information regarding the distribution of the Lilly brand of DES in the Boston area in the 1950's and 1960's. Specifically, Lilly was asked to provide witnesses or investigators who had any information regarding the brand of DES (5mg & 25mg sizes) sold in Boston or in the particular store where the mother shopped. See Def. Resp. to Pls.' Interrogs., a true copy of which is attached hereto as Exhibit 1.

> 1. Witness(es)
> Identify each and every individual(s) known to you, your attorneys or investigators, who may have any information concerning the identity of the brand of diethylstilbestrol ("DES") to which the Plaintiff was exposed *in utero*.
>
> RESPONSE: Lilly incorporates herein its objections E and G. Lilly further objects to this interrogatory as an improper attempt by plaintiffs to require Lilly to prepare plaintiffs' case. Lilly further states that plaintiff has the burden of proving the facts necessary to establish the elements of her alleged cause of action, including the cause of her alleged injuries. Without waiving and subject to its objections, Lilly states that it has not completed its investigation[1] and discovery in this matter, and cannot fully responded to this interrogatory at this time, Because such information is not within the direct knowledge of Lilly, Lilly can only respond to the extent that the information is obtained through discovery, which is still ongoing. At the present time, the witnesses identified by plaintiff may have information concerning the manufacturer(s) of any medication plaintiff Kimberly Cutone's mother allegedly ingested during her pregnancy with plaintiff.

---

[1] The first DES lawsuit was filed in the 1970's. That is a long time to not have completed an investigation in Lilly's own databases and archives.

4

Lilly was also asked whether they contend that any non-Lilly brand was sold and the bases for the answers thereof. See Def.'s Resp. to Pls.' Interrog. No. 4, Ex. 1. Clearly, neither of these questions were answered, or even fairly considered.

Lilly maintains extensive marketing, stocking and distribution information on just these subjects, *and these materials are within their exclusive control.* Defendant Lilly has kept track of its army of salesmen who are required to survey the drugstores in their jurisdiction and report back on the success and pervasiveness of the Lilly products in local drugstores. A number of these employees are now reachable through their retirement records with Lilly. Lilly, a 16 billion dollar company, maintains at least the following records:

A. The Lilly Digest contains pharmacy records outlining their financial conditions. (See FDC Reports: Drugs And Cosmetics, The Pink Slip (F-D-C Reports, Inc., Aug. 10, 1959, attached hereto as Exhibit 2).

B. The Lilly Digest covers over 1,000 stores' sales of pharmaceuticals. (See FDC Reports: Drugs And Cosmetics, The Pink Slip (F-D-C Reports, Inc., Sept. 6, 1947, attached hereto as Exhibit 3.)

C. The Lilly Digest reflects the margin of profits local drugstores make on Lilly products. (See FDC Reports: Drugs And Cosmetics, The Pink Slip (F-D-C Reports, Inc., May 29, 1961, attached hereto as Exhibit 4.)

D. The Lilly Digest reflects over two thousand stores studied by Lilly for "inventory." (See FDC Reports: Drugs And Cosmetics, The Pink Slip (F-D-C Reports, Inc., Aug. 10, 1959, attached hereto as Exhibit 5.)

E.  F.D.C. Report reflects criticism on the dangers of DES by the F.D.A. (See FDC Reports: Drugs And Cosmetics, The Pink Slip (F-D-C Reports, Inc., Jan. 3, 1948 and May 13, 1957, attached hereto as Exhibit 6.)

F.  Lilly's sales in the 1940's surpassed the other U.S. major manufacturers. (See FDC Reports: Drugs And Cosmetics, The Pink Slip (F-D-C Reports, Inc., Mar. 22, 1947, Mar. 29, 1947 and June 21, 1947, attached hereto as Exhibit 7.)

G.  Lilly's publication, De Re Medica, was sent to every physician in America and touted Lilly's DES as the best medicine for pregnant women in 1957. (See Eli Lilly and Company, De Re Medica, Editio Tertia (1951) at 212-214, attached hereto as Exhibit 8.)

H.  Lilly's publication, "The Modern Apothecary," was sent to all American pharmacists and reflects a review of prescription habits for pharmacies nationwide. (See Eli Lilly and Company, The Modern Apothecary, 31, 88 (H.S. Noel ed., 1941), attached hereto as Exhibit 9.)

With all this history and market data, Lilly refuses to allow Plaintiffs' counsel to access back issues of The Lilly Digest or access to the "Lilly Archives," which must contain sales figures and reports on the pervasiveness or the market share of Lilly's DES. Lilly should not be allowed to subvert the discovery rights of the Plaintiff and then pick apart Plaintiffs' evidence at summary judgment.

## CONCLUSION

If Pharmacist Cafferty's opinion fails the stringent scientific standards the Defendant argues, his personal observations are for the trier of facts. In reality, Pharmacist Cafferty is a mixed expert and fact witness and the grounds for admitting his testimony are based on his

personal experiences and observations of facts. In the interest of justice, Lilly should not be allowed to hijack the discovery process and then benefit from their misdeeds.

**WHEREFORE**, Plaintiffs pray the court deny the Defendant's Motion to Strike Statement of Philip Cafferty, R. Ph, or in the alternative to reopen discovery and Stay Defendant's Motion to Strike while granting the Plaintiffs the right to inspect the Lilly Digest and the Lilly Archives for records reflecting Defendant's sale of DES in the Boston area at the relevant time.

                Respectfully submitted,

                KIMBERLY C. CUTONE and
                ANTHONY CUTONE

                By their attorneys,

                /s/ Erica Tennyson
                Juliet A. Davison (BBO #562289)
                Erica Tennyson (BBO #660707)
                TODD & WELD LLP
                28 State Street
                Boston, MA 02109
                (617) 720-2626
                etennyson@toddweld.com

                /s/ Aaron M. Levine
                Aaron M. Levine, #7864
                AARON M. LEVINE & ASSOCIATES
                1320 19th Street, N.W., Suite 500
                Washington, D.C. 20036
                (202) 833-8040
Dated: July 11, 2006        aaronlevinelaw@aol.com

## CERTIFICATE OF SERVICE

I, Erica Tennyson, hereby certify that Plaintiff's Opposition to Defendant Eli Lilly's Motion to Strike the Statement of Philip Cafferty, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on July 11, 2006.

/s/ Erica Tennyson
Erica Tennyson