UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KIMBERLY C. CUTONE and ANTHONY CUTONE,<br><br>        Plaintiffs,<br><br>        v.<br><br>ELI LILLY AND COMPANY,<br><br>        Defendant. | CIVIL ACTION No. 04-CV-12725 (JLT) |

**DEFENDANT ELI LILLY AND COMPANY'S**
**CONSENT MOTION FOR LEAVE TO FILE REPLY BRIEF**

Defendant Eli Lilly and Company ("Lilly") moves this court for leave to file a Reply in support of its Motion to Strike Statement of Philip Cafferty. Lilly's Reply is filed concurrently herewith.

As grounds for this motion, Lilly states that the Reply is necessary to address arguments raised in Plaintiff's Opposition and additional statements submitted by Plaintiffs with their opposition that were not previously part of the record. Lilly believes the Reply will be of assistance to the Court in resolving the issues raised by Lilly's Motion to Strike.

WHEREFORE, Lilly requests the Court grant this motion for leave to file the Reply brief filed concurrently herewith.

B3245410.2

        Respectfully submitted,

        ELI LILLY AND COMPANY
        by its attorneys

        /s/ James J. Dillon
        James J. Dillon (BBO# 124660)
        Brian L. Henninger (BBO# 657926)
        Foley Hoag LLP
        155 Seaport Boulevard
        Boston, MA 02210-2600
        (617) 832-1000

Dated: September 5, 2006

## LOCAL RULE 7.1(A)(2) CONFERRAL CERTIFICATION

    I, Ericka Harper Snyder certify that on August 22, 2006, I conferred with Plaintiffs' counsel regarding Lilly's Motion for Leave to File a Reply Brief. Plaintiffs' counsel consented to the Motion.

        /s/ Ericka Harper Snyder

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

KIMBERLY C. CUTONE and
ANTHONY CUTONE,

        Plaintiffs,

v.

ELI LILLY AND COMPANY,

        Defendant.

CIVIL ACTION No. 04-CV-12725 (JLT)

# ELI LILLY AND COMPANY'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO STRIKE STATEMENT OF PHILIP CAFFERTY

In her Opposition to Defendant Eli Lilly's Motion to Strike the Statement of Philip Cafferty ("Plaintiff's Opposition"), Plaintiff argues that Philip Cafferty's statements concerning DES in Massachusetts are reliable as fact and expert testimony based on his personal observations in pharmacies and as a Lilly detailman, "market research" consisting of discussions with other pharmacists, and review of pharmacist affidavits. Mr. Cafferty (who died prior to the filing of this lawsuit, and is unavailable to testify at trial) was deposed in another case and his deposition makes clear that he had no basis to make the assertions made in his written statement, nor did he have any knowledge about the relevant dispensing pharmacy in this case (Bayard Pharmacy in Allston, Massachusetts). In particular, Mr. Cafferty admitted that his experience as a pharmacist *in Rhode Island* or, during the years relevant here, as a detailman in upstate New York provides him with no basis of knowledge about the Massachusetts DES market. Mr. Cafferty further admitted that his interviews with 16-17 pharmacists found in the 2003 Yellow Pages represented a "very small" survey sample in light of the fact that there were at least 2,500 - 3,700 pharmacists practicing in Massachusetts during the 1960's. The pharmacist affidavits he reviewed were provided by Plaintiff's counsel and obtained for purposes of product

B3233509.3

identification in DES lawsuits, mostly against Lilly. Mr. Cafferty also made no effort to verify the accuracy of any of those statements. Finally, Mr. Cafferty admitted that he detailed six drugs while working for Lilly, but that he never detailed DES, and that he had no reason or opportunity to investigate Lilly's marketing of DES in Massachusetts on his own. For all these reasons, Mr. Cafferty's statement must be excluded.

The remainder of Plaintiff's Opposition is an inappropriate attempt to divert this Court's attention from the substantive product identification issues by making baseless accusations about Lilly's discovery practices in DES cases. Lilly would like to address these accusations up front to expose them as the red herrings they are:

(a)     **The Lilly Digest**

Plaintiff accuses Lilly of withholding "The Lilly Digest," a publication that contains information regarding local pharmacies from around the country. *See* Plaintiff's Opposition at 5. The Lilly Digest was a service initiated in 1932 to analyze "the annual profit and loss statement of any retail pharmacy owner who would supply operations data to Eli Lilly and Company." *See* "History of the Digest," National Community Pharmacists Association, *available at* http://www.ncpanet.org/pdf/digest-history.pdf. It is not a publication about "the pervasiveness of the Lilly products in local drugstores." Plaintiff's Opposition at 5. The Lilly Digest is publicly available from 122 libraries across the country, including several libraries in Plaintiff's counsel's own back yard. *See* WorldCat from Online Computer Library Center, *available at* http://www.oclc.org. Lilly is under no obligation to produce publicly available documents that are equally accessible to Plaintiff. In any event, Lilly has no reason to believe the Lilly Digest contains evidence of what drug Plaintiff's mother obtained from the Bayard Pharmacy in Allston, Massachusetts in 1969 and 1970.

**(b)     FDC Reports**

Plaintiff accuses Lilly of withholding certain "FDC Reports," prepared by a private publishing company, including a 1948 "Pink Sheet" expressing F.D.A. criticism of the dangers of DES. *See* Plaintiff's Opposition at 6. The FDC Reports, including the Pink Sheets, are independent publications that have been tracking developments affecting the regulation and marketing of healthcare products and services in the U.S. since 1939. These reports are not and never have been published by Lilly. Moreover, the FDC Reports are not responsive to Plaintiff's Interrogatories - there is no reason to believe that any FDC report contains information about the stocking and dispensing practices of the relevant pharmacy at issue in this case: Bayard Pharmacy in Allston, Massachusetts.

**(c)     The Modern Apothecary**

Plaintiff accuses Lilly of withholding information relevant to "The Modern Apothecary," a 1941 compendium sent to all American pharmacists that "reflects a review of prescription habits for pharmacies nationwide." *See* Plaintiff's Opposition at 6. Obviously, as with all of the other "withheld" documents that Plaintiff complains about, Plaintiff's counsel already possesses this "The Modern Apothecary" published in 1941, 28 years prior to Plaintiff's alleged exposure to DES. This document analyzes sales and profit data in light of general stocking practices, such as the ratio of chemicals to botanicals, prescription volume, and merchandise turnover. There is no analysis of specific drug products, much less specific drug products sold by Lilly. There is no reason to believe that a publication reviewing general pharmacy stocking habits in 1941 will have any bearing on the stocking and dispensing practices of the Bayard Pharmacy in Allston, Massachusetts in 1969 and 1970.

### (d) Lilly's Responses to Plaintiff's First Set of Interrogatories

Interrogatory Nos. 1 and 4 of Plaintiff's First Set of Interrogatories asked Lilly to identify documents and information relevant to the brand of DES that was dispensed to Plaintiff's mother from the Bayard Pharmacy in Allston, Massachusetts. In her Opposition, Plaintiff accuses Lilly of submitting non-responsive answers to her interrogatories. *See id.* at 4-5. Lilly stands by its answers to Plaintiff's interrogatories. First, Plaintiff's interrogatories are case-specific, requesting identification of witnesses or documents that could possibly shed light on the brand of DES prescribed, purchased, and ingested by *this Plaintiff's* mother. Lilly's investigation of the facts in this case produced no such information. Similarly, the documents Lilly is accused of withholding contain national or regional data that shed no light on the brand of DES prescribed, purchased, and ingested by Plaintiff's mother during the relevant time period. Lilly has made no attempt, and will make no attempt, to rely on these documents for summary judgment or trial purposes.

## II. MR. CAFFERTY'S TESTIMONY DOES NOT QUALIFY AS EVIDENCE UNDER FEDERAL RULE OF EVIDENCE 602

> "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602.

Plaintiff asserts that Mr. Cafferty's observations as a pharmacist and Lilly detailman and district manager provide "relevant and material" fact testimony. Plaintiff's Opposition at 1-2. Plaintiff's assertion is demonstrably false; Mr. Cafferty had no personal knowledge of any facts relevant to this particular case.

Plaintiff's mother allegedly filled her DES prescription at the Bayard Pharmacy in Allston, Massachusetts in 1969 and 1970. Yet Mr. Cafferty admitted at his deposition that he was not licensed as a pharmacist in Massachusetts until 1984 and did not practice as a pharmacist

in Massachusetts until 1997. Cafferty Tr. at 54, 85-86, 96-97 (Dwyer Aff., Exh. 1). Mr. Cafferty's experience in Massachusetts between 1965 and 1984 was limited to his work as a Lilly detailman and district manager for six drugs - none of which were DES. *Id.* at 58-59, 65, 76-77, 84 (Dwyer Aff., Ex. 1). Mr. Cafferty was not an eyewitness and had no personal knowledge of any facts relevant to this matter prior to his death in 2004. Thus, Plaintiff cannot rely on his statement in opposing Lilly's motion for summary judgment.

### A. MR. CAFFERTY'S PERSONAL EXPERIENCE DOES NOT QUALIFY HIM AS AN EXPERT IN DES MASSACHUSETTS MARKET SHARE

Lilly's Motion to Strike fully sets forth the reasons why Mr. Cafferty's statement fails to meet the requirements for expert testimony under Fed. R. Evid. 702.[1] *See* Lilly's Motion to Strike, at 2-5. In her Opposition, Plaintiff asserts that Mr. Cafferty can be qualified as an expert on DES Massachusetts market share in 1969-70 based primarily on his personal experience as a pharmacist and Lilly detailman. *See* Plaintiff's Opposition at 2-3. Again, however, Mr. Cafferty was a retail pharmacist from 1961-1965 in Rhode Island, for a short time in Massachusetts in 1997, and again in 1999. Cafferty Tr. at 96-97 (Dwyer Aff., Exh. 1). It was not until 1997 that any of this experience as a retail pharmacist was gained in Massachusetts. *Id.* (Dwyer Aff., Exh. 1).

In fact, from 1965-1984, Mr. Cafferty did not work as a pharmacist at all. *Id.* at 54 (Dwyer Aff., Exh. 1). He was a Lilly detailman and district manager in certain areas of Rhode Island and southwestern Massachusetts. At no time did Mr. Cafferty's Massachusetts territory

---

[1] Because he is deceased and will not be available to testify at trial, Mr. Cafferty's written statement also constitutes inadmissible hearsay. *See, e.g., Bortell v. Eli Lilly & Co.*, No. 04-0954, slip op., p. 18 (D.D.C. October 19, 2005) (concluding on summary judgment that affidavits signed by two later-deceased pharmacists constituted inadmissible hearsay). Although Mr. Cafferty was deposed in another DES litigation against Lilly prior to the filing of this suit, that deposition was limited to two hours at the insistence of Plaintiff's counsel (Cafferty Tr. at 4, 69-80 (Dwyer Aff., Exh. 1)), and could never be completed due to Mr. Cafferty's health. Thus, the fact-finder at trial would be precluded from assessing Mr. Cafferty's credibility with respect to this Plaintiff's claims.

include Allston, Massachusetts. *See* Cafferty Tr. at 57-58 (testifying that his territory was limited to Fall River, Massachusetts and the surrounding towns (Westport, Somerset, and Swansea) and Newport and Tiverton, Rhode Island) (Dwyer Aff., Exh. 1). Moreover, from 1968 to 1971, Mr. Cafferty's territory shifted to Syracuse, New York. *See id.* at 79 (Dwyer Aff., Exh. 1). For the entire 19 years of his employ at Lilly (a very large pharmaceutical company, even in the 1960's-1980's), Mr. Cafferty supported only six drugs, none of which was DES. Cafferty Tr. at 58-59, 65, 71-72, 76-77, 84 (Dwyer Aff., Exh. 1). Mr. Cafferty admittedly had no occasion to investigate how DES was stocked in retail pharmacies in Massachusetts. *Id.* at 65, 76-77, 84 (Dwyer Aff., Exh. 1). Finally, despite his purported expertise concerning Lilly's manufacture of DES, Mr. Cafferty was not even aware that DES was still on the market for human use. *Id.* at 25-26 (Dwyer Aff., Exh. 1). Put simply, Mr. Cafferty's work as a Lilly detailman for other drugs gives him no special insight into Lilly's marketing practices of DES in 1969 and 1970.

Mr. Cafferty's other activities do not qualify him as an expert. His "market research" consisted of calling around 200 pharmacies listed in the 2003 Yellow Pages in and around Boston. Cafferty Tr. at 7-16, 19-27, 29-40 (Dwyer Aff., Exh. 1). He did not follow a set script, but simply asked whether the pharmacist had a recollection of diethylstilbestrol in the late 1950s and early 1960s and what brands were used, without any follow-up inquiry. *Id.* at 20-22. He did not keep notes of these conversations. *Id.* Out of his 200 calls, the vast majority of the pharmacists were too young to have been practicing pharmacy in Mr. Cafferty's target population: those practicing in the "late fifties or early sixties." *Id.* at 21, 25. Sixteen or seventeen pharmacists that he spoke to said that they had been practicing in this period and recalled DES. If the pharmacist stated that he remembered DES, Cafferty asked what brands they carried and they all purportedly said Lilly. Yet Mr. Cafferty did not ask any details about

wholesalers, dosages, or specific years, nor did attempt to verify the accuracy of those pharmacists' memories, although he assumed that the information was "100% accurate." *Id.* at 39. These interviews represented a "very small" sample of what he estimated were between 2,500 and 3,750 pharmacists practicing in Massachusetts in 1965. *Id.* at 11, 75-76. This "market research" could not lead any credible expert to conclude, as Mr. Cafferty did, that Lilly was the "unique and unrivaled supplier" of DES. Statement of Philip Cafferty, dated October 22, 2003 (attached as Appendix 12 to the Affidavit of Aaron Levine, Esq. Regarding Authentication of Documents, dated May 25, 2006).

Similarly, Mr. Cafferty's review of 100-200 pharmacist affidavits provided to him by Plaintiff's litigation counsel, Aaron Levine, did not constitute credible expert research. Mr. Levine collected those statements precisely for litigation against Lilly and other DES manufacturers. Mr. Cafferty did not attempt to confirm whether those pharmacists' memories were consistent with actual purchasing and prescribing practices in the 1960s. Cafferty Tr. at 105-106 (Dwyer Aff., Exh. 1). He merely assumed that they were accurate and reliable because "I have certainly put my trust and faith in Aaron Levine's judgment." *Id.* at 105. Most telling, however, none of the statements related to the DES taken by Plaintiff's mother, nor do they relate to the Bayard Pharmacy in Allston, Massachusetts.

Finally, Mr. Cafferty's admission that "I have never seen or heard of a DES product not manufactured by Eli Lilly," while incredibly insisting that "no other manufacturers" offered a round, white, cross-scored DES tablet, confirms that he did not have any relevant and credible expertise concerning diethylstilbestrol. Corrected Statement of Philip Cafferty, dated October 22, 2003 (but signed November 17, 2003), at ¶¶ 12 and 15 (attached as Exhibit 10 to the Affidavit of Aaron Levine, Esquire Regarding Authentication of Documents). In fact, hundreds

of companies manufactured diethylstilbestrol, and in 1969 and 1970 alone, DES was manufactured by more than 60 different companies. *See* Lilly's Memorandum In Support of Motion for Summary Judgment, dated May 1, 2006, at 2 and 5, n. 3. Because Mr. Cafferty had never seen or heard of these other DES manufacturers, he could not possibly confirm that they did not also offer a round, white, cross-scored DES tablet. Mr. Cafferty's bald admissions and stretch of reason only confirm that his proffered "expert" opinions have no place in this case.

## CONCLUSION

For the foregoing reasons, Lilly respectfully requests that the Court grant its motion to strike the statement of Philip Cafferty.

Respectfully submitted,

ELI LILLY AND COMPANY
By its attorneys,

/s/ James J. Dillon_____
James J. Dillon (BBO # 124660)
Brian L. Henninger (BBO # 657926)
Foley Hoag LLP
155 Seaport Boulevard
World Trade Center West
Boston, MA 02110-2600
(617) 832-1000

Dated: September 5, 2006